# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| MORRIS ROUTING TECHNOLOGIES, LLC<br><br>                    Plaintiff,<br><br>        v.<br><br>DISH NETWORK CORP, DISH NETWORK LLC and DISH WIRELESS LLC,<br><br>                    Defendants. | Civil Action No. 4:25-cv-859<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Morris Routing Technologies, LLC ("MRT" or "Plaintiff"), for its Complaint against Defendants DISH Network Corp, DISH Network LLC and DISH Wireless LLC (individually each a "Defendant," and collectively "DISH" or "Defendants") alleges the following:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

### THE PARTIES

2.      Plaintiff MRT is a limited liability company organized under the laws of the State of Texas with a place of business at 1312 14th St. Suite 204, Plano TX 75074.

3.   On information and belief, Defendant DISH Network Corp ("DISH") is a corporation organized under the laws of Nevada and may be served through its registered agent for service, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701 USA.

4.   On information and belief, Defendant DISH Network LLC ("DISH Network") is a company organized under the laws of Colorado and may be served through its registered agent for service, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701 USA**.**

5.     On information and belief, Defendant, DISH Wireless LLC ("DISH Wireless") is a company organized under the laws of Colorado and may be served through its registered agent for service, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701 USA**.**

## JURISDICTION AND VENUE

6.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

7.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

9.     DISH is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

10.     This Court has general and specific personal jurisdiction over the Defendants under the laws of the State of Texas, due at least to their substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas.  DISH has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district.  Venue is also proper in this district because DISH has a regular and established place of business and has committed acts of infringement in this district.

11.     For example, on information and belief, DISH has regular and established places of business at: DISH has regular and established places of business in this district, including at least

at 6826 Industrial Rd. #D, Beaumont, Texas, 77705; 1120 E Parker Rd # 112, Plano, TX 75074; 2100 Couch Dr., McKinney, Texas, 75069; 801 K Ave., Suite #2, Plano, TX 75074; 2273 Masch Branch Road, Denton, Texas, 76207**.**[1]

12.     DISH also advertises in the Eastern District of Texas, including but not limited to advertising the geographic coverage of the DISH networks within this District. By way of example and without limitation, DISH's website provides a coverage map that advertises DISH's current 5G wireless coverage in and around Plano, Texas.[2]

13.     On information and belief, DISH has numerous employees who work in Texas, including within the Eastern District of Texas.  DISH publishes information regarding its hiring process which indicates it interviewed candidates in Plano, Texas for jobs such as software engineering, software developers and management positions for 5G network data:

---

[1] *See, e.g.*, https://www.boostmobile.com/locations/tx/plano;
https://www.boostmobile.com/locations/tx;
https://www.google.com/maps/place/DISH/@33.1722698,-
96.6110302,19z/data=!4m6!3m5!1s0x864c11270578be75:0xdc19ee652daa4f36!8m2!3d33.1724
826!4d-
96.6113663!16s%2Fg%2F11g072shx4?entry=ttu&g_ep=EgoyMDI1MDgwNS4wIKXMDSoAS
AFQAw%3D%3D; https://www.google.com/maps/@33.1729686,-
96.6117532,3a,75y,236.76h,90.18t/data=!3m7!1e1!3m5!1sr-
Q7xXJnvOiIKqowaEK_zw!2e0!6shttps:%2F%2Fstreetviewpixels-
pa.googleapis.com%2Fv1%2Fthumbnail%3Fcb_client%3Dmaps_sv.tactile%26w%3D900%26h
%3D600%26pitch%3D-0.17654931421023434%26panoid%3Dr-
Q7xXJnvOiIKqowaEK_zw%26yaw%3D236.7580179980097!7i16384!8i8192?entry=ttu&g_ep=
EgoyMDI1MDgwNS4wIKXMDSoASAFQAw%3D%3D
[2] *See, e.g.*, https://www.boostmobile.com/coveragemap_xp; *see also*
https://www.dish.com/availability/tx.



**Hiring Recruitment Interview Information**

| City | State | Vacancy | Job Vacancy Title | Recruitment Source that Referred the Hiree | Recruitment Source Utilized to Fill the Vacancy | Hired Date | Interviewed |
|------|-------|---------|-------------------|---------------------------------------------|-------------------------------------------------|------------|-------------|
| Plano | TX | 2024-85575 | IT Product Owner I | Internal Candidate | Internal | 4/3/2024 | 14 |
| Plano | TX | 2024-85548 | Staff Engineer - Software | I AM A CURRENT OR FO | Careers | 6/17/2024 | 8 |
| Plano | TX | 2024-85604 | Sr. Software Engineering Manager - 5G Network Data | Internal Candidate | Internal | 9/3/2024 | 5 |
| Plano | TX | 2024-85891 | Staff Product Owner | Vendor/Agency | Careers | 9/9/2024 | 6 |
| Plano | TX | 2024-85921 | Senior Engineer - Software Test | Vendor/Agency | iCIMS Talent Platform | 6/24/2024 | 2 |
| Plano | TX | 2024-86396 | Staff Software Engineer in Test | Vendor/Agency | iCIMS Talent Platform | 6/24/2024 | 2 |
| Plano | TX | 2024-86673 | Software Developer II | Vendor/Agency | iCIMS Talent Platform | 7/15/2024 | 6 |
| Plano | TX | 2024-86125 | Engineer Software Test | Vendor/Agency | iCIMS Talent Platform | 7/15/2024 | 2 |
| Plano | TX | 2024-86677 | Service Management Developer | Vendor/Agency | iCIMS Talent Platform | 7/22/2024 | 4 |
| Plano | TX | 2024-87731 | Senior Solution Architect | INVITED BY A RECRUITE | iCIMS Talent Platform | 8/12/2024 | 14 |

14.     DISH has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of this District, including benefits directly related to DISH's infringement of the Patents-In-Suit.

15.      DISH's infringement has thus caused substantial injury to MRT, including in this judicial district.

## BACKGROUND

### The Inventions of the Patents-in-Suit

16. Mr. Robert Paul Morris is the inventor of U.S. Patent Nos. 10,652,133 ("the '133 patent"; Exhibit A), 10,574,562 ("the '562 patent"; Exhibit B), 10,652,134 ("the '134 patent"; Exhibit C), 10,757,010 ("the '010 patent"; Exhibit D), 10,805,204 ("the '204 patent"; Exhibit E), 11,757,756 ("the '756 patent"; Exhibit F), 11,784,914 ("the '914 patent"; Exhibit G) (collectively, the "Patents-in-Suit").  True and correct copies of the Patents-in-Suit are attached as Exhibits A-G.

17. The Patents-in-Suit resulted from the pioneering efforts of Mr. Morris (hereinafter "the Inventor") in the area of segment-based routing ("SR").  These efforts resulted in the development

of methods and apparatuses for improving the routing, provisioning and transport of data packets across networks in the 2012 timeframe using SR over Multiprotocol Label Switching ("MPLS") and IPv6 data planes (*see, e.g.,* '133 patent, col. 20:11-45), which are now referred to as "SR-MPLS" and "SRv6" respectively.

18. At the time of these pioneering efforts, the most widely implemented technology used to address network traffic engineering was IP-based forwarding using a distributed control plane as well as constrained shortest-path forwarding.  In traditional IP/MPLS networks, routing decisions are made based on destination IP addresses, and packet forwarding decisions are determined hop-by-hop based on routing tables.

19. MPLS introduced the concept of label switching, where packets are assigned labels at ingress routers and forwarded based on these labels rather than IP addresses, which can improve forwarding efficiency and allow for traffic engineering.  However, explicit state information had to be maintained at all hops along an MPLS path, leading to scalability problems in the control plane and the data plane.  Additionally, per-connection traffic steering did not take advantage of load balancing offered by equal cost multipath routing typically used in IP networks.

20. The Inventor conceived of the inventions claimed in the Patents-in-Suit as a way to improve addressing.  (*See, e.g.,* '133 patent, col. 2:57-59.)  Prior to the Inventor's efforts, Internet protocol dealt primarily with addresses and left mapping from names to addresses and mapping from local net addresses to routes to other protocol layers.  The claimed inventions of the Patents-in-Suit establish new relationships between and among names, addresses and routes to improve network operations.

21. The claimed inventions of the Patents-in-Suit allow the source to choose a path and encode it in the packet header as a sequence of identifiers that identify segments.  (*See, e.g.,* '133

patent, col. 18:55-20:45; col. 21:12-23:7; col. 33:13-61; Figs. 2, 9-11, 13.)  Using the claimed inventions of the Patents-in-Suit, networks no longer need to maintain a per-application and per-flow state and need only obey the forwarding information provided in the packet.  This results in a dramatic reduction in the per-flow state that needs to be maintained in network nodes supporting traffic engineered paths.  For example, instead of relying on a complex network of label-switched paths (LSPs) established by control protocols like LDP (Label Distribution Protocol) or RSVP-TE (Resource Reservation Protocol - Traffic Engineering), the inventions claimed in the Patents-in-Suit use source routing where a packet's path through the network is identified in the packet.  (*See, e.g.*, '133 patent, col. 24:61-28:60; col. 30:54-63; col. 38:42-52; col. 41:49-57.)

22. The Inventor conceived of different ways to implement segment-based routing, including with MPLS-based and IPv6-based networks.  For example, with the claimed inventions of the Patents-in-Suit, a segment identifier can be embodied as an MPLS label and a plurality of segment identifiers can be included in a sequence thereof.  The first segment identifier of the sequence is processed and upon completion, such segment identifier is removed from the sequence.  By removing reliance on label-switched paths established by control protocols, the network architecture is simplified and has greater scalability and flexibility.

23. In another example, the claimed inventions of the Patents-in-Suit extend IPv6 and allow SR over the IPv6 data plane.  The claimed inventions enable use of multiple segment identifiers embodied as IPv6 addresses in headers and a plurality of segment identifiers embodied as a sequence of IPv6 addresses. A segment identifier is indicated by the destination address of the packet and a pointer another segment identifier.  This allows even more precise control over packet forwarding and even greater flexibility and scalability.

24. With the inventions claimed in the Patents-in-Suit, network operators can specify explicit paths for packets to travel through the network and can also leverage IPv6's larger address space to improve scalability and define and manage greater numbers of explicit paths.  This also allows the inclusion of service functions directly into the header providing for servicing chaining and integration of network functions.  There is reduced need for state management in routers and because packets carry their path information, it is more secure because of the difficulty attackers face manipulating or spoofing routing information now carried in the packet.

25. Using the claimed inventions, network bandwidth is used more effectively and performance is optimized.  The control plane is greatly simplified and the amount of state information maintained by network nodes is reduced significantly.  There is less reliance on complex configurations and protocols to control the flow of traffic through a network because operators can define explicit paths.  (*See, e.g.*, '133 patent, col. 24:61-28:60; col. 30:54-63; col. 38:42-52; col. 41:49-57.) This facilitates service chaining where network operators define paths that include service nodes such as firewalls and intrusion detection systems, to improve security, and load balancers, to optimize performance.  This results in costs savings by reducing the need for over-provisioning of network resources and improving the overall efficiency of the network infrastructure.  There is lower latency and traffic is protected against link and node failures without requiring burdensome additional signaling requirements in the network while providing optimum backup paths.

## Advantage Over the Prior Art

26. The patented inventions disclosed in the Patents-in-Suits, provide many advantages over the prior art, and in particular improve the operations of networks using a path-based protocol address.  (*See, e.g.,* '133 patent at col. 2:7-59.)  One advantage of the patented invention is that

fewer nodes, in particular path nodes, are required to maintain state information for each path in a network. (*See, e.g.,* '133 patent at col. 30:54-63.)

27. Another advantage of the patented invention is that utilizing path information in the packet header to route a packet through a network reduces or eliminates the need for additional protocols.  (*See, e.g.,* '133, col. 41:49-57.)

28. Another advantage of the patented invention is that specific network paths may be specified using path information in the packet header, which allows precise traffic control and selective routing for various purposes such as reduced power consumption, decreased processing time or other cost-saving measures.  (*See, e.g.,* '133 patent, col. 23:25-32; col. 51:4-10; col. 52:13-29.)

29. Yet another advantage of the patented invention is dynamic routing that responds to disruptions in the network by updating the routing path through the network in response.  (*See, e.g.,* '133 patent at col. 35:34-59; col. 36:64-37:51; col. 50:14-18.)   An operation command may be included in the header so that as the data packet is routed through a path node it is routed through a particular node capable of performing the operation identified by the command in the header. (*See, e.g.,* '133 patent at col. 47:28-33; col. 50:22-28.)

30. Because of these significant advantages that can be achieved through the use of the patented inventions, MRT believes that the Patents-in-Suit present significant commercial value for companies like DISH.  Indeed, SR has been identified as a key enabling technology for traffic engineering and network slicing.[3]

---

[3] *See, e.g.,* https://about.dish.com/news-releases?item=123535 ("Cisco will support DISH with the following: IOS-XR operating system for 5G, backhaul and fronthaul transport via Cisco NCS series routers, ***segment routing for automated traffic management and network slicing***, Nexus 9000 series with an Application Centric Infrastructure (ACI) fabric for data center

**Technological Innovation**

31. The patented inventions disclosed in the Patents-in-Suit resolves technical problems related to traffic engineering in networks, particularly the complexity and scalability problems presented by the incredible growth in networking and the Internet.  As the Patents-in-Suit patent explain, one of the limitations of the prior art as regards network routing was that the approach traditionally used for addressing and routing, and the effect on network latency.  (*See, e.g.,* '133 patent at col. 2:7-59.)

32. The claims of the Patents-in-Suit do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the Patents-in-Suit recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to efficiently and effectively manage network traffic with optimum utilization of network resources. (*See, e.g.*, '133 patent, col. 50:58-51:10.)

33. In addition, the claims of the Patents-in-Suit recite inventive concepts that improve the functioning of network hardware such as routers for transferring data packets through a network, particularly by reducing the demand on transit nodes and egress nodes to maintain state information and reducing the number of protocols required.  (*See, e.g.*, '133 patent, col. 41:49-57.)

34. Moreover, the claims of the Patents-in-Suit recite inventive concepts that are not merely routine or conventional use of transferring information.  Instead, the patented invention disclosed in the Patents-in-Suit provides a new and novel solution to specific problems related to improving network performance and packet routing through networks that are scalable and dynamic.

---

switching, and Cisco Crosswork Network Controller as the transport domain controller including automated service provisioning and assurance.") (emphasis added).

35. And finally, the patented inventions disclosed in the Patents-in-Suit do not preempt all the ways that packet routing may be used to improve network trafficking, nor do the Patents-in-Suit patent preempt any other well-known or prior art technology.

36. Accordingly, the claims in the Patents-in-Suit recite a combination of elements sufficient to ensure that the claims in substance and in practice amount to significantly more than a patent-ineligible abstract idea.

**Internet Engineering Task Force (IETF) and Standard Setting Organizations**

37. The IETF is a standards setting organization. It publishes technical documents referred to as RFCs that define technical foundations and specify application protocols.[4] Each RFC is a product of the IETF and represents the consensus of the IETF community.

38. The IETF has a working group, SPRING, which has published a number of RFCs related to SR, including RFC 8402, RFC 8660, RFC 8663, RFC 8754, RFC 8986, RFC 9256 and RFC 9352 (collectively "SR RFCs").

39. RFC 8402 is entitled "Segment Routing Architecture" and specifies an architectural framework and requirements for implementing SR, including both SR-MPLS and SRv6.[5]

40. RFC 8660 is entitled "Segment Routing with the MPLS Data Plane" and "specifies the forwarding behavior to allow instantiating SR over the MPLS data plane (SR-MPLS)."[6]

41. RFC 8663 is entitled "MPLS Segment Routing over IP" and "describes how SR-MPLS-capable routers and IP-only routers can seamlessly coexist and interoperate through the use of SR-MPLS label stacks and IP encapsulation/tunneling such as MPLS-over-UDP . . . ."[7]

---

[4] https://www.ietf.org/process/rfcs/.
[5] https://datatracker.ietf.org/doc/rfc8402/.
[6] https://datatracker.ietf.org/doc/html/rfc8660.
[7] https://datatracker.ietf.org/doc/html/rfc8663.

42.    RFC 8754 is entitled "IPv6 Segment Routing Header (SRH)" and "describes the SRH and how it is used by nodes that are Segment Routing (SR) capable."[8]

43.    RFC 8986 is entitled "Segment Routing over IPv6 (SRv6) Network Programming" and "defines the SRv6 Network Programming concept and specifies the base set of SRv6 behaviors that enables the creation of interoperable overlays with underlay optimization."[9]

44.    RFC 9256 is entitled "Segment Routing Policy Architecture" and "updates RFC 8402 as it details the concepts of SR Policy and steering into an SR Policy."[10] "SR Policy is an ordered list of segments (i.e., instructions) that represent a source-routed policy."[11]

45.    RFC 9352 is entitled "IS-IS Extensions to Support Segment Routing over the IPv6 Data Plane" and "describes the IS-IS extensions required to support SR over the IPv6 data plane."[12]

46.    Numerous companies supply interoperable equipment and software solutions that support SR-capable networks and the requirements set forth in the SR RFCs.[13]  Numerous companies also contributed to the SR RFCs.[14, 15, 16, 17, 18, 19]

---

[8] https://datatracker.ietf.org/doc/html/rfc8754

[9] https://datatracker.ietf.org/doc/html/rfc8986

[10] https://datatracker.ietf.org/doc/html/rfc9256

[11] https://datatracker.ietf.org/doc/html/rfc9256

[12] https://datatracker.ietf.org/doc/html/rfc9352

[13] *See, e.g.*, https://documentation.nokia.com/html/0_add-h-f/93-0073-HTML/7750_SR_OS_Router_Configuration_Guide/appen_standards.pdf; https://eantc.de/wp-content/uploads/2022/03/EANTC-InteropTest2022-TestReport.pdf; https://eantc.de/wp-content/uploads/2023/04/EANTC-InteropTest2023-TestReport.pdf; https://eantc.de/wp-content/uploads/2023/12/EANTC-MPLSSDNInterop2024-TestReport-v1.3.pdf (Cisco, Nokia, etc.).

[14] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc8986.html#name-contributors (Cisco, Nokia, etc.).

[15] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc9256.html#name-contributors (Cisco, Microsoft, etc.).

[16] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc8660.html#name-contributors (Cisco, Nokia, etc.).

[17] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc8663.html#name-contributors (Cisco, Nokia, etc.).

[18] *See, e.g.*, https://www.rfc-editor.org/rfc/rfc9352.html#name-contributors (Cisco, etc.).

[19] *See, e.g.*, https://datatracker.ietf.org/doc/html/rfc8402 (Cisco, Nokia, etc.).

47.    In the context of 5G and wireless networks, multiple standard setting organizations and industry-based open source communities are involved in creating standards and ensuring interoperability which is critical given the diversity of components and services that are interconnected.  One example is the 3rd Generation Partnership Project ("3GPP").  It is a standard setting organization that develops protocols for mobile telecommunications, including the 5G standard and non-radio access to core networks and other interworking with non-3GPP networks.[20]

48.    The O-RAN ALLIANCE is another example. It is an open technical organization founded in 2018 and DISH is a member.[21]  Its "mission is to encourage the industry towards more intelligent, open, virtualized and fully inter-operable mobile networks."[22]    It publishes specifications and supports integration and testing while working with other standard setting organizations to ensure compatibility.[23]

**DISH's Networks and Accused Instrumentalities**

49.    DISH operates one or more networks including its nationwide 5G network under the Boost Mobile brand and enterprise 5G networks (collectively the "DISH Networks").[24]

50.    DISH's networks include 5G stand-alone networks, which utilize an O-RAN architecture and multiple third party suppliers, and in which DISH serves as the overall system

---

[20] *See, e.g.*, https://www.3gpp.org/about-us/introducing-3gpp;
https://www.3gpp.org/ftp/Information/presentations/Newcomers_quick-start/Newcomers_slides.pdf.
[21] *See, e.g.*, https://www.o-ran.org/membership (Boost Mobile).
[22] *See, e.g.*, https://assets-global.website-files.com/60b4ffd4ca081979751b5ed2/64bee579b5449cafb9f0f889_Governance%20of%20O-RAN%20ALLIANCE%20e.V.%20in%20Compliance%20with%20WTO%20Principles-v02.pdf.
[23] *Id.*
[24] *See, e.g.*, https://www.fierce-network.com/5g/dish-teams-cisco-tackle-enterprise-5g/.

integrator.[25]  A VMWare customer case study about Dish outlines its Open RAN 5G network with the following:



DISH Wireless Network Architecture Diagram

26

51.    The DISH Networks utilize equipment and network solutions from vendors including  Nokia[27], Cisco, Samsung[28] and AWS.[29]

---

[25] DISH Network Corp. Annual Report 2024 at 8 ("In addition, our 5G Network Deployment utilizes an O-RAN architecture, which is designed to, among other things, incorporate components sourced from various third-party suppliers. Generally, these third-party suppliers do not ensure that their products will integrate with components provided by other third-party suppliers. As a result, we generally serve as the overall system integrator.").

[26] https://www.vmware.com/docs/vmw-dish-case-study.

[27] *See, e.g.*, https://www.nokia.com/newsroom/nokia-supports-dish-wireless-launch-of-worlds-first-telco-network-using-5g-standalone-core-on-aws-public-cloud/ (5G Standalone Core); https://about.dish.com/news-releases?item=123510.

[28] *See, e.g.*, https://news.samsung.com/us/samsung-launches-wireless-dish-virtual-open-ran-5g-network-february-2023.

[29] https://about.dish.com/2022-06-15-DISHs-Smart-5G-TM-Wireless-Network-is-Now-Available-to-Over-20-Percent-of-the-U-S-Population (Nokia, Samsung, Cisco, etc.); https://about.dish.com/news-releases?item=123535.

52.     On information and belief, the DISH Networks utilize SR.[30]

53.     On information and belief, the DISH Networks utilize equipment and network solutions that support SR.[31]

54.     On information and belief, the DISH Networks utilize SR according to RFC 8402.

55.     On information and belief, the DISH Networks utilize SR according to RFC 8660.

56.     On information and belief, the DISH Networks utilize SR according to RFC 8663.

57.     On information and belief, the DISH Networks utilize SR according to RFC 8754.

---

[30] *See, e.g.*,  https://www.fierce-network.com/5g/dish-teams-cisco-tackle-enterprise-5g (Cisco IOS-XR with NCS routers and segment routing for automated traffic management and network slicing);  https://aws.amazon.com/blogs/industries/telco-meets-aws-cloud-deploying-dishs-5g-network-in-aws-cloud/ (SR-MPLS); https://documentation.nokia.com/sr/24-3/7750-sr/books/common/dita_standards_2.html; https://www.cisco.com/c/en/us/td/docs/routers/ncs6000/software/ncs6k-7-6/segment-routing/configuration/guide/b-segment-routing-cg-ncs6000-76x.pdf; https://www.cisco.com/c/en/us/td/docs/switches/datacenter/nexus9000/sw/7-x/label-switching/configuration/guide/b_Cisco_Nexus_9000_Series_NX-OS_Label_Switching_Configuration_Guide_7x.pdf; https://jobs.echostar.com/technology/jobs/93215?lang=en-us ("Boost Mobile is seeking a Cloud Network Engineer II to provide hands-on support for the deployment of our nationwide 5G network.  This network includes a state of the art IP routing infrastructure utilizing leading edge technologies such as BGP, MPLS, ***SR-MPLS, Segment Routing***, EVPN,  high-speed dark fiber connectivity, and interface speeds up to 400Gbps.") (emphasis added).
[31] *See, e.g.*,  https://www.fierce-network.com/5g/dish-teams-cisco-tackle-enterprise-5g (Cisco IOS-XR with NCS routers and segment routing for automated traffic management and network slicing);  https://aws.amazon.com/blogs/industries/telco-meets-aws-cloud-deploying-dishs-5g-network-in-aws-cloud/ (SR-MPLS); https://documentation.nokia.com/sr/24-3/7750-sr/books/common/dita_standards_2.html; https://www.cisco.com/c/en/us/td/docs/routers/ncs6000/software/ncs6k-7-6/segment-routing/configuration/guide/b-segment-routing-cg-ncs6000-76x.pdf; https://www.cisco.com/c/en/us/td/docs/switches/datacenter/nexus9000/sw/7-x/label-switching/configuration/guide/b_Cisco_Nexus_9000_Series_NX-OS_Label_Switching_Configuration_Guide_7x.pdf; https://jobs.echostar.com/technology/jobs/93215?lang=en-us ("Boost Mobile is seeking a Cloud Network Engineer II to provide hands-on support for the deployment of our nationwide 5G network.  This network includes a state of the art IP routing infrastructure utilizing leading edge technologies such as BGP, MPLS, ***SR-MPLS, Segment Routing***, EVPN,  high-speed dark fiber connectivity, and interface speeds up to 400Gbps.") (emphasis added).

58.     On information and belief, the DISH Networks utilize SR according to RFC 8986.

59.     On information and belief, the DISH Networks utilize SR according to RFC 9256.

60.     On information and belief, the DISH Networks utilize SR according to RFC 9352.

61.     On information and belief, the DISH Networks support the functionality specified in the SR RFCs ("Accused Instrumentalities").

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,652,133

62.     The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

63.     On May 12, 2020, U.S. Patent No. 10,652,133 ("the '133 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

64.     Plaintiff is the assignee and owner of the right, title and interest in and to the '133 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

65.     The '133 patent is valid and enforceable.  A true and correct copy of the '133 patent is attached as Exhibit A.

66.     Upon information and belief, DISH has and continues to directly infringe at least claim 12 of the '133 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

67.     Exemplary infringement analysis showing infringement of claim 12 of the '133 patent is set forth in Exhibit H. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DISH with respect to the '133 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '133 patent.

68.    The Accused Instrumentalities infringed and continue to infringe claim 12 of the '133 patent during the pendency of the '133 patent.

69.    MRT has been harmed by DISH's infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,574,562

70.    The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

71.    On February 25, 2020, U.S. Patent No. 10,574,562 ("the '562 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

72.    Plaintiff is the assignee and owner of the right, title and interest in and to the '562 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

73.    The '562 patent is valid and enforceable.  A true and correct copy of the '562 patent is attached as Exhibit B.

74.    Upon information and belief, DISH has and continues to directly infringe at least claim 1 of the '562 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

75.    Exemplary infringement analysis showing infringement of claim 1 of the '562 patent is set forth in Exhibit I.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DISH with respect to the '562 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '562 patent.

76.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the '562 patent during the pendency of the '562 patent.

77.    MRT has been harmed by DISH's infringing activities.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,652,134

78.    The allegations set forth in the foregoing paragraphs are incorporated into this Third Claim for Relief.

79.    On May 12, 2020, U.S. Patent No. 10,652,134 ("the '134 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

80.    Plaintiff is the assignee and owner of the right, title and interest in and to the '134 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

81.    The '134 patent is valid and enforceable.  A true and correct copy of the '134 patent is attached as Exhibit C.

82.    Upon information and belief, DISH has and continues to directly infringe at least claim 1 of the '134 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

83.    Exemplary infringement analysis showing infringement of claim 1 of the '134 patent is set forth in Exhibit J.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DISH with respect to the '134 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '134 patent.

84.     The Accused Instrumentalities infringed and continue to infringe claim 1 of the '134 patent during the pendency of the '134 patent.

85.     MRT has been harmed by DISH's infringing activities.

### COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,757,010

86.     The allegations set forth in the foregoing paragraphs are incorporated into this Fourth Claim for Relief.

87.     On August 20, 2019, U.S. Patent No. 10,757,010 ("the '010 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

88.     Plaintiff is the assignee and owner of the right, title and interest in and to the '010 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

89.     The '010 patent is valid and enforceable.  A true and correct copy of the '010 patent is attached as Exhibit D.

90.     Upon information and belief, DISH has and continues to directly infringe at least claim 2 of the '010 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

91.     Exemplary infringement analysis showing infringement of claim 2 of the '010 patent is set forth in Exhibit K.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DISH with respect to the '010 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '010 patent.

92.    The Accused Instrumentalities infringed and continue to infringe claim 2 of the '010 patent during the pendency of the '010 patent.

93.    MRT has been harmed by DISH's infringing activities.

### COUNT V – INFRINGEMENT OF U.S. PATENT NO. 10,805,204

94.    The allegations set forth in the foregoing paragraphs are incorporated into this Fifth Claim for Relief.

95.    On October 13, 2020, U.S. Patent No. 10,805,204 ("the '204 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

96.    Plaintiff is the assignee and owner of the right, title and interest in and to the '204 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

97.    The '204 patent is valid and enforceable.  A true and correct copy of the '204 patent is attached as Exhibit E.

98.    Upon information and belief, DISH has and continues to directly infringe at least claim 15 of the '204 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

99.    Exemplary infringement analysis showing infringement of claim 15 of the '204 patent is set forth in Exhibit L.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DISH with respect to the '204 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '204 patent.

100.    The Accused Instrumentalities infringed and continue to infringe claim 15 of the '204 patent during the pendency of the '204 patent.

101.    MRT has been harmed by DISH's infringing activities.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 11,757,756

102.    The allegations set forth in the foregoing paragraphs are incorporated into this Sixth Claim for Relief.

103.    On September 12, 2023, U.S. Patent No. 11,757,756 ("the '756 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

104.    Plaintiff is the assignee and owner of the right, title and interest in and to the '756 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

105.    The '756 patent is valid and enforceable.  A true and correct copy of the '756 patent is attached as Exhibit F.

106.    Upon information and belief, DISH has and continues to directly infringe at least claim 10 of the '756 patent by making, using, selling, importing and/or providing and causing to be used  the Accused Instrumentalities.

107.    Exemplary infringement analysis showing infringement of claim 10 of the '756 patent is set forth in Exhibit M.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DISH with respect to the '756 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '756 patent.

108.    The Accused Instrumentalities infringed and continue to infringe claim 10 of the '756 patent during the pendency of the '756 patent.

109.    MRT has been harmed by DISH's infringing activities.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 11,784,914

110.    The allegations set forth in the foregoing paragraphs are incorporated into this Seventh Claim for Relief.

111.    On October 10, 2023, U.S. Patent No. 11,784,914 ("the '914 patent"), entitled "ROUTING METHODS, SYSTEMS, AND COMPUTER PROGRAM PRODUCTS" was duly and legally issued by the United States Patent and Trademark Office.

112.    Plaintiff is the assignee and owner of the right, title and interest in and to the '914 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

113.    The '914 patent is valid and enforceable.  A true and correct copy of the '914 patent is attached as Exhibit G.

114.    Upon information and belief, DISH has and continues to directly infringe at least claim 1 of the '914 patent by making, using, selling, importing and/or providing and causing to be used the Accused Instrumentalities.

115.    Exemplary infringement analysis showing infringement of claim 1 of the '914 patent is set forth in Exhibit N.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by DISH with respect to the '914 patent.  MRT reserves all rights to amend, supplement and modify this preliminary infringement analysis.

Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '914 patent.

116.    The Accused Instrumentalities infringed and continue to infringe claim 1 of the '914 patent during the pendency of the '914 patent.

117.    MRT has been harmed by DISH's infringing activities.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MRT demands a trial by jury on all issues triable as such.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MRT demands judgment for itself and against DISH as follows:

A.    An adjudication that the DISH has infringed the Patents-in-Suit;

B.    An award of damages to be paid by DISH adequate to compensate MRT for DISH's past infringement of the Patents-in-Suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of MRT's reasonable attorneys' fees; and

D.    An award to MRT of such further relief at law or in equity as the Court deems just and proper.

Dated: August 8, 2025                   DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin
Derek Dahlgren (pro hac vice to be filed)
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com

G. Andrew Gordon, (pro hac vice to be filed)
Andrew Gordon Law Firm PLLC
6518 Ryeworth Dr.
Frisco, TX 75035
Phone: (408) 390-4473
andrew@agordonlawfirm.com

*Attorneys for Plaintiff Morris Routing
Technologies, LLC*